

FILED
2018 Nov-08  AM 10:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT "A"
# (State Court Pleadings)

ELECTRONICALLY FILED
10/4/2018 3:33 PM
01-CV-2018-904014.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev.5/99 | **COVER SHEET<br>CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case<br>01 |
|---|---|---|
| | | Date of Filing:<br>10/04/2018   Judge Code: |

## GENERAL INFORMATION

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA**
**ESTATE OF ESSIE MCELRATH v. BIRMINGHAM NURSING AND REHABILITATION, LLC**

**First Plaintiff:** ☐ Business  ☑ Individual  **First Defendant:** ☑ Business  ☐ Individual
 ☐ Government  ☐ Other   ☐ Government  ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☑ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other:_____

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/<br>Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/<br>Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ EPFA - Elder Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:**  F ☑ INITIAL FILING   A ☐ APPEAL FROM<br>DISTRICT COURT   O ☐ OTHER

R ☐ REMANDED   T ☐ TRANSFERRED FROM<br>OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES ☐ NO   **Note:** Checking "Yes" does not constitute a demand for a<br>jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:**  ☑ MONETARY AWARD REQUESTED  ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**

TAT009          10/4/2018 3:33:25 PM          /s/ CHARLES CLYDE TATUM JR
_____          _____          _____
          Date          Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:**   ☐ YES ☑ NO ☐ UNDECIDED

**Election to Proceed under the Alabama Rules for Expedited Civil Actions:**   ☐ YES ☐ NO



AlaFile E-Notice

01-CV-2018-904014.00

To:   CHARLES CLYDE TATUM JR
ctatum7@aol.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

ESTATE OF ESSIE MCELRATH V. BIRMINGHAM NURSING AND REHABILITATION, LLC
01-CV-2018-904014.00

The following complaint was FILED on 10/4/2018 3:35:14 PM

Notice Date:      10/4/2018 3:35:14 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2018-904014.00

To:  BIRMINGHAM NURSING AND REHABILITATION, LLC
     C/O RICHARD GILL, REG AGT
     444 S. PERRY ST.
     MONTGOMERY, AL, 36104

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

ESTATE OF ESSIE MCELRATH V. BIRMINGHAM NURSING AND REHABILITATION, LLC
01-CV-2018-904014.00

The following complaint was FILED on 10/4/2018 3:35:14 PM

Notice Date:     10/4/2018 3:35:14 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
anne-marie.adams@alacourt.gov

| State of Alabama<br>Unified Judicial System<br>Form C-34   Rev. 4/2017 | SUMMONS<br>- CIVIL - | Court Case Number<br>01-CV-2018-904014.00 |
| --- | --- | --- |

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### ESTATE OF ESSIE MCELRATH V. BIRMINGHAM NURSING AND REHABILITATION, LLC

NOTICE TO: BIRMINGHAM NURSING AND REHABILITATION, LLC, C/O RICHARD GILL, REG AGT 444 S. PERRY ST., MONTGOMERY, AL 36104

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), CHARLES CLYDE TATUM JR

*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: P.O. BOX 349, JASPER, AL 35502

*[Address(es) of Plaintiff(s) or Attorney(s)]*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of ESTATE OF ESSIE MCELRATH

*[Name(s)]*

pursuant to the Alabama Rules of the Civil Procedure.

| 10/4/2018 3:35:14 PM | /s/ ANNE-MARIE ADAMS | By: |
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.    /s/ CHARLES CLYDE TATUM JR

*(Plaintiff's/Attorney's Signature)*

## RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____ .

*(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,

*(Name of Person Served)*          *(Name of County)*

Alabama on _____ .

*(Date)*

_____    _____    _____

*(Type of Process Server)*     *(Server's Signature)*        *(Address of Server)*

_____    _____

*(Server's Printed Name)*      *(Phone Number of Server)*

ELECTRONICALLY FILED
10/29/2018 3:33 PM
01-CV-2018-904014.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| The Estate of Essie McElrath, by and through his personal representative Erskine McElrath,<br><br>        Plaintiff,<br><br>v.<br><br>Birmingham Nursing Rehabilitation Center, LLC, Defendants A, B, and C that person, firm, corporation or other legal entity commonly known as or d/b/a Birmingham Nursing Rehabilitation Center, LLC; Defendants D, E, and F, that person, firm, corporation or other legal entity who owned or operated Birmingham Nursing Rehabilitation Center, LLC on the date made the occurrence made the basis of this suit; Defendants G, H, and I, that firm, corporation or other legal entity who was vicariously responsible for the negligent acts or omissions referred to in the Complaint; Defendants J, K, and L, that firm, corporation or other legal entity whose negligence, combined and concurred, with the negligence of the named and Fictitious Defendants; Defendants M. N, and O, that person, firm, corporation or other legal entity for whom benefit of the nursing home made the basis of this suit was being operated; Defendant P, Q, and R, that person who was the Director of nursing at the nursing home made the basis of this suit; Defendants S, T, and U, that person who was the Administrator of the nursing home made the basis of this suit; V, W, X, and Y, all individuals or entities who rendered care to Essie McElrath in a negligent, wanton and/or tortuous manner; all of those true names are otherwise unknown but will be added by amendment when ascertained,<br><br>        Defendants, | CASE NUMBER:<br>01-CV-2018-<br><br><br>PLAINTIFF<br>DEMANDS TRIAL<br>BY STRUCK JURY |

## COMPLAINT

**COME NOW**, Plaintiff the Estate of Essie McElrath, and files this Complaint against the

named and fictitious party Defendants stating the following:

## PARTIES

1

1.      Essie McElrath died intestate on November 16, 2017.  Letters of Administration were issued to his personal representative, Erskine McElrath, on February 12, 2018 by the Probate Court of Walker County, Alabama (*PC 2018-034)*.  This action is brought by and through the personal representative on behalf of the Estate of Essie McElrath, Deceased.

2.      Defendant Birmingham Nursing Rehabilitation Center, LLC is a skilled nursing home and rehabilitation facility operating within the jurisdiction of Jefferson County, Alabama.

3.      Whenever the term "Birmingham Nursing Home Defendants" is utilized within this Complaint, such term collectively refers to and includes Birmingham Nursing Rehabilitation Center, LLC, and all fictitious Defendants A through Y.

4.      Whenever it is alleged that the Defendants did any act or thing or failed to do any act or thing, it is meant that the officers, agent or employees of the stated corporations or entities respectively performed, participated in, or failed to perform such acts or things while in the course and scope of their employment or agency relationship with said Defendants.

5.      Whenever it is alleged that the "Defendants" in the collective context did any act or thing or failed to do any act, it is also meant that the officers, agents or employees of Defendants performed, participated or failed to perform such acts while in the course and scope of their employment or agency relationship with said Defendants.

6.      The identities of the fictitious parties A through Y are unknown to the Plaintiffs at this time, or if they are known by the Plaintiffs, they are not known as a party Defendant; however, when the Plaintiffs ascertain the identities of these parties they will be substituted at that time.

## **FACTS**

2

7.     Mr. McElrath became a resident of Birmingham Nursing and Rehabilitation Center facility, located at 1000 Dugan Drive, Birmingham, Alabama 35214 on or about the 22nd day of June 22, 2017, and he remained a resident until November 1, 2017.

8.     At all times material hereto, the Birmingham Nursing Home Defendants held themselves out as a nursing and rehabilitation center capable of providing a full complement of nursing services, long term care, and other attendant facilities equipped to care for the needs of patients such as Mr. McElrath.

9.     In an effort to assure that Mr. McElrath and other residents were placed at Birmingham Nursing Rehabilitation Center, LLC, the Birmingham Nursing Home Defendant held themselves out to the Alabama Nursing Home Association and the public at large as being:

a)     skilled in the performance of nursing, rehabilitative, and other medical support services;

b)     properly staffed, supervised, and equipped to meet the total needs of its nursing home residents; and

c)     able to specifically meet the total nursing home, medical, and physical therapy needs of Mr. McElrath and other residents like him.  Additionally, in Mr. McElrath's case, said Defendants made specific representations and promises to him and his family regarding the quality and quantity of professional nursing and medical care that would be provided.  Defendants were aware that Mr. McElrath was severely debilitated, and in a bedfast condition; that Mr. McElrath was unable to care for his activities of daily living or hygiene; that Mr. McElrath was diabetic and suffered from chronic kidney disease; that Mr. McElrath had decubiti ulcers and was at risk for

the development of decubiti ulcers, and complications from decubiti ulcers when they made the representations and promises to him and his family.

10.    The Defendants were well aware of Mr. McElrath's medical condition and the care that he required when they represented to him and his family that they could adequately care for his needs.  The Defendants were aware that Mr. McElrath was at risk for the development of decubiti ulcers, as well as complications therefrom, and failed to take reasonable steps necessary to minimize or eliminate the risk of Mr. McElrath developing decubiti ulcers.

11.    On the basis of these claims, Mr. McElrath and his family placed their trust in the Defendants.

12.    The Defendants and all fictitious party Defendants A through Y wholly failed to discharge their obligations of care to Mr. McElrath.  As a consequence thereof, Mr. McElrath suffered catastrophic injuries, extreme pain, suffering, and mental anguish, and death.

13.    More specifically, Defendant Birmingham Nursing Rehabilitation Center, LLC, through its employees, failed to provide Mr. McElrath with adequate care and/or medical equipment, failed to relieve pressure on vulnerable areas of Mr. McElrath's body with medical care and/or proper medical equipment, failed to reduce shear and friction on Mr. McElrath's body during care, failed to inspect Mr. McElrath on a regular basis so as to detect and treat decubiti ulcers, and failed to provide Plaintiff proper skin hygiene, or otherwise failed to properly inspect, assess, diagnose, and treat decubiti ulcers located on Mr. McElrath's lower extremities, lower back, and buttocks.  As a result of these acts or omissions, Mr. McElrath developed multiple life threatening stage IV decubiti ulcers that were infected, foul smelling, and gangrenous, and showed signs of significant tissue loss with visibly exposed muscle, tendons, and bones.

4

14.     The Birmingham Nursing Home Defendants further failed to deliver appropriate care to Mr. McElrath by causing him to suffer from dehydration, malnourishment, and severe anemia, causing his health to rapidly decline.  By November 1, 2017, Mr. McElrath health had deteriorated such that he was unresponsive and septic.  He was discharged and taken by ambulance to St. Vincent's Hospital East, where the physicians were otherwise unable to treat his mortal wounds or impede the onset of his death.  On November 16, 2017, Mr. McElrath expired stemming from life threatening complications of his infected decubiti ulcers.

15.     Mr. McElrath contends that the malpractice of the Birmingham Nursing Home Defendants and its employees resulted, in part, from a systemic failure to adequately document the treatment of the Birmingham Nursing Home Defendants' patients as well as a failure to maintain medical records which contained sufficient information to justify the diagnosis and treatment of those patients including Mr. McElrath.  Mr. McElrath contends that the Birmingham Nursing Home Defendants and its employees involved in his care failed to document the results, including, at a minimum, documented evidence of assessments of the needs of Mr. McElrath, for the establishment of appropriate plans of care and treatment, and for the care and services provided during his treatment as a whole.  Mr. McElrath also contends that the acts and omissions described above occurred as a result of the Birmingham Nursing Home Defendants understaffing and/or failure to properly train and/or supervise its staff.

16.     The scope of severity of the recurrent negligence inflicted upon Mr. McElrath while under the care of the Defendants accelerated the deterioration of his health and physical condition beyond that caused by the normal aging process and resulted in his death.

5

17.     All of Mr. McElrath's injuries as well as the conduct specified below caused Mr. McElrath to lose his personal dignity; caused shame and humiliation, extreme and unnecessary pain, degradation, anguish, emotional trauma and death.

18.     Mr. McElrath alleges that on all of the occasions complained of herein, he was under the care, supervision, and treatment of the agents and/or employees of the Defendants and that the injuries complained of herein were proximately caused by the acts and omissions of said Defendants and/or the fictitious Defendants A through Y named herein.

19.     Defendants had vicarious liability for the acts and omissions of all persons or entities under the Defendants' control, either direct or indirect, including their employees, agents, consultants, and independent contractors, whether in-house or outside entities, individuals, agencies or pools causing or contributing to Plaintiff's injuries.

## COUNT I:  NEGLIGENCE AND WANTONESS CLAIM

20.     Plaintiffs allege and incorporate the allegations in paragraphs one (1) through nineteen (19) as if fully set forth herein.

21.     The Birmingham Nursing Home Defendants owed a duty to residents, including Mr. McElrath, to hire, train, and supervise employees so that such employees delivered care and services to residents in a safe and beneficial manner.

22.     The employees of the Birmingham Nursing Home Defendants owed a duty to residents, including Mr. McElrath, to render care and services as a reasonably prudent and similarly situated nursing home and rehabilitation facility employee would render; including, but not limited to, rendering care and services in safe and beneficial manner.

6

23.     The Defendants and their employees and consultants breached their duties as follows: The Defendants were aware that Mr. McElrath was at risk for developing decubiti ulcers and complications therefrom and failed to take reasonable steps necessary to minimize or eliminate the risk of Mr. McElrath developing infected decubiti ulcers.  Defendant Birmingham Nursing and Rehabilitation, LLC, through its employees, failed to provide Mr. McElrath with proper care, hygiene, and/or medical equipment to prevent the development of mortally infected decubiti ulcers.  Defendant Birmingham Nursing and Rehabilitation, LLC, through its employees, failed to provide Mr. McElrath with proper nourishment and hydration which contributed to and hastened his death by compromising his ability to ward off gangrenous infections.  As a result Mr. McElrath developed foul smelling, gangrenous, decubiti ulcers with significant tissue loss and having visibly exposed muscle, tendons, and bone.  Defendants failed to take reasonable steps necessary for the treatment of his mortally infected decubiti ulcers by qualified medical professionals causing his health to rapidly decline and discharged him from their care in a septic and unresponsive state that he could not overcome.

24.     Mr. McElrath contends that the malpractice of the Birmingham Nursing Home Defendants and its employees are, in part, from a systemic failure over the course of months and even years to adequately document the treatment of the Defendants' patients as well as a failure to maintain medical records which contained sufficient information to justify the diagnosis and treatment of those patients including Mr. McElrath himself.  Mr. McElrath contends that the Birmingham Nursing Home Defendants and its employees involved in his care failed to document the results, including, at a minimum, documented evidence of assessments of his needs, for the establishment of appropriate plans of care and treatment, and for the care and services provided during his treatment from June 22, 2017 to November 1, 2017.  Mr. McElrath also contends that

7

the acts and omissions described above occurred as a result of the Birmingham Nursing Home Defendants' understaffing and/or failure to properly train and/or supervise its staff.

25.    In addition to those acts and omissions described above, Mr. McElrath avers that the negligence, gross negligence and/or wantonness of the Birmingham Nursing Home Defendants, their employees and consultants, and/or the fictitious Defendants named herein as A through Y includes, but is not limited to, one or more of the following acts and omissions which occurred from June 22, 2017 to November 1, 2017:

a)    failing to provide him with adequate supervision and assistance to prevent formation of mortally infected decubiti ulcers;

b)    failing to notify his medical doctor and/or family in a timely manner of mistakes or errors made in connection with his treatment;

c)    failing to provide him a safe functional environment;

d)    failing to provide comprehensive and accurate assessments for his safety;

e)    failure to provide adequate safety measures;

f)    failure to conduct comprehensive and accurate assessments of his medical conditions and needs;

g)    failure to provide appropriate action based on assessments of his medical conditions;

h)    failure to maintain acceptable parameters of nutritional status;

i)    failure to monitor his status and take appropriate interventions to provide care;

j)    failure to follow his medical doctor's orders;

8

k)      failure to ensure the necessary care and services to allow and maintain his highest physical, mental, psychological and social well-being;

l)       failure to adequately document his charts;

m)      failing to provide sufficient numbers of qualified personnel including nurses, nurse assistants, medication aides, and orderlies, ("nursing personnel") to meet his total needs in conjunction with the needs of other residents of the said facility;

n)      failing to increase the number of nursing personnel at said facility to insure that he:

1)      received the correct prescribed treatment, medication, and diet;

2)      was appropriately provided nutrition in a manner which would not cause his health to deteriorate; and

3)      was protected from accidental injuries by the correct use of ordered and reasonable safety measures;

o)      failing to provide nursing personnel sufficient in number to provide      him and the other residents at Birmingham Nursing and Rehabilitation, LLC with the proper care;

p)      failing to provide adequate supervision to the nursing staff so as to assure that he received adequate and proper nutrition in the appropriate manner and sufficient nursing observation and examination of the responses, symptoms, and progress in his physical condition;

q)      failing to adequately assess, evaluate and supervise nurses, nurses' aides or assistants, medication assistants, and dietary personnel so as to assure

9

that he received good, proper nursing care, in accordance    with      the Birmingham Nursing Home Defendants' policy and procedures manual, the rules of the Alabama State Board of Health for nursing facilities, the applicable standard of care and the regulations of the U.S. Department of Health and Human Services;

r)      failing to adequately supervise the Administrator of said facility;

s)      failing to adequately supervise the Director of Nurses at said facility;

t)      failing to adequately supervise other nursing staff at said facility;

u)      failing to provide a nursing staff that was properly manned, qualified, trained and motivated;

v)      failing to adequately screen, evaluate and check references, test for competence, and use ordinary care in selecting nursing personnel to work at said facility;

w)      failing to terminate employees at said facility assigned to him that were known to be careless, incompetent, unwilling to comply with the policy and procedures of Defendants and the rules and regulations promulgated by the Alabama State Board of Health;

x)      failing to assign nursing personnel at said facility duties consistent with their education and experience based on:

1)      his medication history and condition, nursing and rehabilitative needs;

10

2)      The characteristics of the resident population residing in the area of the facility where he was a resident; and

3)      The nursing skills needed to provide care to such resident population;

y)      failing to establish, publish and/or adhere to policies for nursing personnel concerning the care and treatment of residents with nursing, medical, psychological and social needs similar to his;

z)       failing to provide and assure an adequate nursing care plan based on his needs at the time of his admission to said facility;

aa)     failing to provide and assure adequate nursing care plan revisions and modifications as his needs changed;

bb)     failing to implement and assure that an adequate nursing-care plan for him was followed by nursing personnel;

cc)     failing to adopt adequate guidelines, policies and procedures for:

1)      investigating the relevant facts, underlying deficiencies or licensure violations or penalties found to exist at said facility by the Alabama State Board of Health or any state or federal survey agency; and

2)      connecting the cause of any such deficiencies or licensure violations of penalties found to exist at said facility;

dd)     failing to adopt adequate guidelines, policies and procedures for determining whether the Birmingham Nursing Home Defendants had a

11

sufficient number of nursing personnel which includes nurses, nurses assistants, orderlies and other staff to:

1)      provide 24-hour nursing services;

2)      meet the needs of residents who are admitted to or remain in the facility; and

3)      meet the total nursing needs to residents;

ee)     failing to adopt adequate guidelines, policies and procedures for documenting and maintaining files, investigating and responding to any complaint regarding the quantity of resident care, the quality of resident care or misconduct by employees at said facility no matter whether such complaint derived from a resident of said facility, an employee of the facility or any interested person.

ff)     failing to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care at said facility;

gg)     failure of the members of the governing body of said facility to discharge their legal and lawful obligation by:

1)      assuring that the rules and regulations designed to protect the health and safety of the residents, such as himself, as promulgated by the Alabama State Board of Health were consistently complied with on an ongoing basis;

2)      assuring that the resident care policies for said facility were consistently complied with on an ongoing basis;

12

3)      assuring that the policy and procedure manuals for said facility were updated  and modified to address problems which consistently emerged at the facility; and

4)      responsibly assuring that appropriate corrective measures were implemented to cure problems concerning inadequate resident care;

hh)    failing to properly assess him for the risk of developing decubiti ulcers or risk of injury;

ii)    failing to properly monitor him from June 22, 2017 to November 1, 2017;

jj)    failing to properly chart his medical care and assess his condition from June 22, 2017 to November 1, 2017;

kk)    failing to follow doctor's orders in connection with his treatment from June 22, 2017 to November 1, 2017;

ll)    failing to assure and provide his with adequate nursing care, treatments and medication from June 22, 2017 to November 1, 2017;

mm)    failing to adequately and timely assess, monitor and treat the development and/or progression of infected decubiti ulcers, sepsis, and anemia;

nn)    failing to maintain medical records which contained sufficient information to justify the diagnosis and treatment and to document the results, including, at a minimum, documented evidence of assessments of the his needs, for the establishment of appropriate plans of  care and treatment, and for the care and services provided.

13

oo)   failing to appropriately monitor him and recognize significant signs and symptoms of change in his health condition.

pp)   failing to properly notify his family of significant changes in his health status.

qq)   failing to notify his attending physician of significant changes in his physical condition;

rr)   failing to insure proper documentation and charting of his and other residents under the care of the Birmingham Nursing Home Defendants.

26.   The aforementioned conduct was continuing, successive, consecutive, and repeated throughout the short residency of Plaintiff, and especially from June 22, 2017 to November 1, 2017.

27.    A reasonably prudent nursing home and its employees, operating under the same or similar conditions, would not have failed to provide the important care listed above. Each of the foregoing acts of negligence on the part of the Defendants was a proximate cause Plaintiff's injury. Plaintiff's injuries were foreseeable to the Defendants.

28.   Plaintiff further avers the Birmingham Nursing Home Defendants acted wantonly by deliberating ignoring clear and obvious signs of plaintiff's rapidly declining health and refused to adequately treat, nourish, and sustain plaintiff.

29.   Plaintiff was a private paying resident and his admission his bills were fully paid. Over the course of four months plaintiff payments to defendants exceeded $25,000.  Rather than lose this source of revenue, the Birmingham Nursing Home Defendants deliberately turned a blind eye to plaintiff's acute medical needs and declining health and refused to discharge him to an acute care hospital capable of providing life-saving care and treatment.

14

30.     Plaintiff further avers defendants were motivated by profit and greed and deliberately ignored the overwhelming stench and foul-smelling discharge emanating from plaintiff for weeks.

31.     Plaintiff further avers defendants deliberately falsified plaintiff's medical records to reflect he was being adequately nourished, hydrated, medicated, and receiving proper care, when in truth he was neglected, undernourished, and allowed his wounds to rot and decay which hastened his death.

WHEREFORE, as a direct and proximate result of such negligent, grossly negligent, wanton, reckless, malicious and/or intentional conduct, Plaintiff asserts a claim for judgment for compensatory and punitive damages against the Defendants, jointly and severally, and all fictitious party Defendants, in an amount to be determined by a jury, plus costs and other relief to which Plaintiff is entitled by law.

## COUNT II: NEGLIGENCE PER SE CLAIM

32.     Plaintiffs adopt by reference and incorporate the allegations in paragraphs one (1) through nineteen (19) as if fully set forth herein.

33.     The Defendants are a licensed nursing home and rehabilitation facility; as such it is understood in law and certified for participation in the Medicaid program as an intermediate and skilled facility. By reason of the election to participate in such programs, the Defendants are, and at all times material to this lawsuit were, required to comply with:

> 1)     Rules and regulations promulgated by the Alabama State Board of Health, Rules 420-5-10-.01 through 420-5-10-.18, chapter 420-5-10, Nursing Facilities, Alabama Administrative Code, and the Federal Minimum Standards of Participation imposed by the United States Department of

15

Health and Human Services. 42 Code of Federal Regulations § 405.301 et

seq.  Moreover, Defendants were at all times material to this lawsuit

required to comply with the foregoing rules and regulations in caring for

Plaintiff.

34.     The Defendants have violated the aforementioned laws by their acts and omissions,

which include, but are not limited to, one or more of the following:

1)     Failing to have sufficient nursing staff to provide nursing and related

services to attain or maintain the highest practicable physical, mental, and

psychological  and social well-being of Plaintiff as determined by his

resident assessment and individual plan of care;

2)     Failing to provide services by sufficient numbers of licensed nursing and

other nurse personnel on a 24-hour basis to provide nursing care to all

residents including Plaintiff, in accordance with his resident care plan;

3)      Failing to insure that Plaintiff's and other residents' environment

remained as free of accident hazards as possible;

4)      Failing to insure that Plaintiff received adequate supervision and

assistance devices to prevent accidents;

5)      Failing to insure that Plaintiff received the necessary care and services to

attain or maintain the highest practicable physical, mental and

psychological and social well-being in accordance with the comprehensive

assessment and plan of care;

6)     Failing to insure that Plaintiff's abilities and activities of daily living did

not diminish unless such diminution was unavoidable; and

16

> 7)     Failing to insure that Plaintiff was given the appropriate treatment and
>
> services to maintain or improve his abilities and activities of living.

35.     Mr. McElrath would further show that he fell within the class of persons that the above-cited rules, regulations and laws were intended to protect, thus entitling him to adopt such laws as the standard of care for measuring Defendants' conduct.  Thus, Plaintiff asserts a claim of negligence per se asserting that as a matter of law the conduct of the Defendants toward him amounted to negligence.

36.     One or more of the above-cited violations of law was a proximate cause of his catastrophic injuries as previously set forth herein.

WHEREFORE, Plaintiff seeks damages against the Defendants and all fictitious Defendants A through Y, jointly or severally, in an amount to be determined by a jury plus costs and any other relief to which Plaintiff is entitled by law.

Respectfully submitted,


*//s// Charles Clyde Tatum, Jr.*_____
Charles Clyde Tatum, Jr., Esquire
*//s// Seth L. Diamond*_____
Seth L. diamond, Esquire
Charles C. Tatum, Jr. P.C.
Post Office Box 349
Jasper, Alabama 35502
(205) 387-0708
Ctatum7@aol.com
sethdiamond@sethdiamondlaw.com

---

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY**

---

17

**PLEASE SERVE THE FOLLOWING BY CERTIFIED MAIL:**

Birmingham Nursing and Rehabilitation, LLC
c/o RICHARD H GILL, Registered Agent
444 S PERRY ST
MONTGOMERY, AL 36104

18

ELECTRONICALLY FILED
11/8/2018 3:33 PM
01-CV-2018-904014.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK



# NOTICE TO CLERK

### REQUIREMENTS FOR COMPLETING SERVICE BY
### CERTIFIED MAIL OR FIRST CLASS MAIL

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
ESTATE OF ESSIE MCELRATH V. BIRMINGHAM NURSING AND REHABILITATION, LLC

01-CV-2018-904014.00

To:  CLERK BIRMINGHAM
     clerk.birmingham@alacourt.gov

TOTAL POSTAGE PAID: $8.04

Parties to be served by Certified Mail - Return Receipt Requested

BIRMINGHAM NURSING AND REHABILITATION, LLC                    Postage: $8.04
C/O RICHARD GILL, REG AGT
444 S. PERRY ST.
MONTGOMERY, AL 36104

Parties to be served by Certified Mail - Restricted Delivery - Return Receipt Requested

Parties to be served by First Class Mail

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

O F F I C I A L   U S E

Certified Mail Fee

$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)        $ _____
☐ Return Receipt (electronic)      $ _____
☐ Certified Mail Restricted Delivery  $ _____
☐ Adult Signature Required         $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark
Here

Postage

$

Total Postage and Fees

$

Sent To

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

PS Form 3800, April 2015 PSN 7530-02-000-9047     See Reverse for Instructions

7017 1070 0001 0859 3102

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

BIRMINGHAM NURSING AND REHABILITATION, LLC
C/O RICHARD GILL, REG AGT
444 S. PERRY ST.
MONTGOMERY, AL 36104

9590 9402 2705 6351 9130 82

2. Article Number *(Transfer from service label)*

7017 1070 0001 0859 3102

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by *(Printed Name)*      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

D1
CV 2018 904014 5/c

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery
(over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt