UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THE ESTATE OF ESSIE MCELRATH, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 2:18-cv-01849-RDP |
| } | |
| BIRMINGHAM NURSING AND } | |
| REHABILITATION CENTER LLC, } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

This matter is before the court on Defendant's motion to compel arbitration. (Doc. # 4). The motion has been fully briefed. (Docs. # 5, 7, 8). After careful consideration, and for the reasons explained below, the court concludes the motion (Doc. # 4) is due to be granted.

**I.   Background**

Essie McElrath died of complications from infected bed sores on November 16, 2017, about four months after he became a long-term care resident at Birmingham Nursing and Rehabilitation Center ("Birmingham Nursing"). (Doc. # 1-1 at ¶¶ 7-8, 14).[1] In October 2018, McElrath's estate sued Birmingham Nursing for negligence, wantonness, and negligence per se in Alabama state court, claiming Birmingham Nursing's neglect of McElrath led to his death. (*Id.* at ¶¶ 20-36). Birmingham Nursing removed the case to this court on November 8, 2018 (Doc. # 1) and filed a motion to compel arbitration on December 11, 2018 (Doc. # 4).

McElrath experienced declining health for some time before he became a resident at Birmingham Nursing. (Docs. # 7-1 at 2, ¶ 4; 7-2 at 2, ¶ 5). After his wife died in December 2016,

---

[1] The court assumes the allegations in Plaintiff's Complaint are true for purposes of ruling on Defendant's motion to compel arbitration.

1

he needed help managing his financial affairs and keeping up with his monthly bills and expenses. (Doc. # 7-1 at 2, ¶ 3). On February 27, 2017, McElrath executed a power of attorney granting a family friend, Toya Spencer, authority to make certain decisions on his behalf. (*Id.* at 2, ¶ 6; *id.* at 6-7).

As time went on, McElrath required more frequent hospitalizations for longer periods of time. (Doc. # 7-2 at 3, ¶ 9). His mental status also declined. (Docs. # 7-1 at 2, ¶ 8; 7-2 at 10). He began to be confused about where he was, the time of day, and the time of year. (Docs. # 7-1 at 2, ¶ 8; 7-2 at 3, ¶ 11). He had difficulty communicating his basic wants or needs, such as whether he was uncomfortable, hungry, or wanted to watch TV. (Docs. # 7-1 at 3, ¶ 8; 7-2 at 3, ¶ 12). He had trouble recognizing friends and relatives he had known for years when they visited him, and had to be reminded frequently about who people were and how he knew them. (Docs. # 7-1 at 3, ¶ 8; 7-2 at 4, ¶ 13).

During one hospitalization, Toya Spencer made discharge plans for McElrath to be admitted to a skilled nursing facility. (Doc. # 7 at 3). At that time, McElrath was "mentally confused and physically incapacitated." (Doc. # 7-1 at 3, ¶ 9). His son's affidavit explains that McElrath "was totally dependent and functioned like a child. He couldn't even carry-on [sic] a meaningful conversation." (Doc. # 7-2 at 4, ¶ 14). Spencer met with a representative from Birmingham Nursing and made arrangements for McElrath to be admitted to its nursing and rehabilitation center upon his discharge from the hospital. (Doc. # 7 at 3). As part of the admission process, Spencer signed various admissions forms for McElrath, including an arbitration agreement. (Docs. # 7-1 at 3-4, ¶¶ 9-13; 5-1 at 7-11). McElrath was not present when Spencer signed the arbitration agreement, never saw the arbitration agreement, and did not give Spencer express permission to sign the arbitration agreement or other admission forms on his

behalf. (Doc. # 7-1 at 3-4, ¶¶ 10-12). Spencer declares she never told McElrath about signing his admission paperwork or the arbitration agreement because she "knew it just would have confused him even more." (*Id.* at 4, ¶ 13).

The arbitration agreement identifies "Birmingham Nursing and Rehabilitation Center, LLC" and "Essie Mcelrath" as the "Parties to the Agreement." (Doc. # 5-1 at 7). It provides that "[t]he parties understand and agree that all claims, disputes, and controversies of any kind between the parties arising out of or relating in any way to . . . any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration." (*Id.*). The agreement expressly states that it covers "any claim for . . . negligence, medical malpractice, wrongful death, or any other claim based on any departure from accepted standards of medical, nursing, or health care whether sounding in tort or contract." (*Id.*). It also provides, "If this Agreement is signed by Resident's Authorized Representative, the Authorized Representative hereby certifies that he/she is duly authorized to execute this Agreement for the Resident." (*Id.* at 10-11). The agreement identifies Toya Spencer as "Resident's Authorized Representative." (*Id.* at 11). It was signed by Spencer and by Birmingham Nursing's representative Rosa Stephens on June 5, 2017. (*Id.*).

**II.     Analysis**

The Federal Arbitration Act ("FAA") makes arbitration agreements "valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA provides that a district court must, "on application of one of the parties," stay any action involving an issue "referable to arbitration under" a prior written arbitration agreement. *Id.*, § 3. The FAA also grants district courts authority to issue "an order directing that . . . arbitration proceed in the manner provide for" in a written arbitration

3

agreement. *Id.*, § 4. Birmingham Nursing seeks to invoke its rights under both § 3 and § 4 of the FAA: it asks the court to stay this action pending arbitration and order McElrath's estate to arbitrate this dispute. The estate has just one objection: it claims McElrath never agreed to arbitrate this dispute and thus that his estate has every right to pursue its claims against Birmingham Nursing in a judicial forum. Specifically, the estate claims that Toya Spencer, who signed the arbitration agreement in question, had no authority to bind McElrath to the terms of the agreement. The parties' disagreement about whether this case belongs in arbitration thus turns on just one question: Did Toya Spencer's agreement to enter into Birmingham Nursing's arbitration contract bind Essie McElrath (and, consequently, his estate[2]) to the terms of that document?

Under the FAA, "arbitration is a matter of contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, No. 17-1272, 2019 WL 122164, at *1 (U.S. Jan. 8, 2019). Thus, when deciding whether a contract to arbitrate a dispute exists, courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under Alabama law, a mentally incompetent person is not bound to an arbitration agreement signed on his behalf by someone not authorized to do so. *SSC Montgomery Cedar Crest Operating Co., LLC v. Bolding*, 130 So. 3d 1194, 1199 (Ala. 2013). Though the doctrine of apparent authority allows mentally competent nursing home residents who passively permit another to sign an arbitration agreement on their behalf to be bound by the agreement, that rule does not apply if the resident is mentally incompetent. *Id.* at 1198-99.

---

[2] McElrath's estate correctly recognizes that, if McElrath was bound by the arbitration agreement, his estate is also bound. *Entrekin v. Internal Med. Assocs. of Dothan, P.A.*, 689 F.3d 1248, 1259 (11th Cir. 2012) (explaining that under Alabama law, "an executor suing a nursing home for wrongful death is bound by an arbitration agreement that binds the decedent").

4

McElrath's estate has submitted evidence that McElrath was mentally incompetent when Toya Spencer signed the arbitration agreement on his behalf (Docs. # 7-1, 7-2), and Birmingham Nursing does not dispute that evidence. Instead, Birmingham Nursing argues that Spencer nevertheless had authority to bind McElrath to the arbitration agreement based on a power of attorney McElrath had previously granted Spencer. McElrath's estate does not dispute that McElrath validly executed the power of attorney, giving Spencer authority to act as McElrath's agent with respect to certain matters. It merely argues that the power of attorney did not give Spencer power to act as McElrath's agent in *this* matter—that is, agreeing to arbitration on McElrath's behalf. The court must therefore determine the scope of the authority conferred on Spencer by the power of attorney.

The Alabama Supreme Court has held that a validly executed durable power of attorney gives the grantor's attorney-in-fact the power to enter an arbitration agreement on the grantor's behalf. *Troy Health & Rehab. Ctr. v. McFarland*, 187 So. 3d 1112, 1121-22 (Ala. 2015). In *Troy Health*, a Mr. Wilcoxon had executed a "Durable General Power of Attorney" authorizing his daughter "to act in, manage, and conduct all of Wilcoxon's affairs." *Id.* at 1116 (internal quotation marks and brackets omitted). His daughter subsequently signed an arbitration agreement on his behalf with Troy Health and Rehabilitation Center, where Wilcoxon was a resident, agreeing to arbitrate all claims between Wilcoxon and Troy Health. *Id.* at 1117. Wilcoxon later died at the Troy Health facility, and the personal representative for his estate sued Troy Health on various tort and contract claims. *Id.* Troy Health moved to compel arbitration based on the arbitration agreement signed by Wilcoxon's daughter as his attorney-in-fact. *Id.* at 1117-18. Because Wilcoxon's estate failed to prove that Wilcoxon was mentally incompetent when he executed the power of attorney, the Alabama Supreme Court held that the arbitration

5

agreement bound Wilcoxon and that his estate could therefore be compelled to arbitration. *Id.* at 1118-22.

*Troy Health* supplies the rule of law in this case. Like Wilcoxon, McElrath executed a valid,[3] durable[4] general power of attorney in favor of Toya Spencer, who later signed an arbitration agreement on McElrath's behalf with Birmingham Nursing. The power of attorney authorized Spencer to "act in [McElrath's] name, place and stead in any way which" McElrath could do if personally present "with respect to the following matters." (Doc. # 7-1 at 6). The document then listed an array of matters and instructed the grantor to mark and initial next to those matters he wished to grant his attorney-in-fact authority over. (*Id.*). McElrath marked and initialed several areas, including "Claims and litigation" and a catch-all provision at the end of the list, "All other matters." (*Id.* at 6-7). The court concludes that, under Alabama law, McElrath's grant of authority to Spencer over "Claims and litigation" and "All other matters" included the authority to sign arbitration agreements on McElrath's behalf. *Cf. Troy Health*, 187 So. 3d at 1116 (power of attorney authorizing agent to "act in, manage, and conduct all [of principal's] affairs" included power to sign arbitration agreement on principal's behalf).

Though McElrath's estate does not argue the point, some Alabama case law suggests that attorneys-in-fact may take certain actions only if the power of attorney *expressly* grants them

---

[3] McElrath's estate does not dispute that McElrath was mentally competent in February 2017, when he executed the power of attorney. And, in any event, it certainly has submitted no evidence that would satisfy its burden under Alabama law to show "that the person who executed the power of attorney was incompetent when he or she executed the power of attorney" or "was habitually or permanently incompetent before executing the power of attorney." *Troy Health*, 187 So. 3d at 1119.

[4] Though the document McElrath and Spencer executed is titled "General Power of Attorney" and does not explicitly state that it is durable, that is of no consequence. All powers of attorney executed on or after January 1, 2012 are governed by the Alabama Uniform Power of Attorney Act. Ala. Code § 26-1A-103. Under the Act, a power of attorney "is durable, unless it expressly provides that it is terminated by the incapacity of the principal." *Id.*, § 26-1A-104. McElrath's power of attorney nowhere so provides, and thus it was "not terminated by [McElrath's] incapacity." *Id.*, § 26-1A-102.

6

authority to take that action.[5] The court is aware of no Alabama case law holding that entering arbitration agreements is among those actions that require an express grant of authority. But even if Alabama law did embrace such a rule, it would be preempted by the FAA and therefore invalid. *See Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1425-28 (2017) (holding Kentucky's rule that an attorney-in-fact has power to enter an arbitration agreement only if specifically granted that authority was preempted by the FAA because it singled out arbitration contracts for disfavored treatment).

Spencer was authorized by a validly executed power of attorney to enter arbitration agreements on McElrath's behalf. The arbitration agreement she signed bound McElrath, and thus now binds McElrath's estate. Birmingham Nursing's motion to compel arbitration is therefore due to be granted.

**III. Conclusion**

For the reasons explained above, Defendant's motion to compel arbitration (Doc. # 4) is due to be granted. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this January 18, 2019.

                                                                                    _____
                                                                                    **R. DAVID PROCTOR**
                                                                                    UNITED STATES DISTRICT JUDGE

---

[5] In *Lamb v. Scott*, 643 So. 2d 972, 973-74 (Ala. 1994), for example, the Alabama Supreme Court held that a daughter acting as attorney-in-fact for her mother lacked authority to convey her mother's farm to herself and her sister after her mother became incapacitated because the power to do so was not expressly granted in the power of attorney executed by her mother. The mother had previously executed a will leaving the farm in equal shares to her two daughters *and* her stepson. *Id.* at 973. Alabama courts have subsequently limited *Lamb* to situations in which an attorney-in-fact uses a power not expressly granted by the power of attorney to engage in self-dealing. *See Miller v. Jackson Hosp. & Clinic*, 776 So. 2d 122, 124-25 (Ala. 2000) (distinguishing *Lamb* and holding that an attorney-in-fact had authority to take an action not expressly referenced in the power of attorney where no self-dealing was involved); *Harrelson v. Harrelson*, 7 So. 3d 1004, 1011 (Ala. Civ. App. 2008) (same). There is no assertion of self-dealing here, nor is there any suggestion of it in the record.